# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4203

_____

David Hughes,                                    *
                                                 *
              Plaintiff - Appellant,             *
                                                 *
       v.                                        *
                                                 *   Appeal from the United States
Roger D. Stottlemyre, Colonel, in his            *   District Court for the Western
official capacity; James P. Ripley, as an        *   District of Missouri.
individual and in his official capacity;         *
Eric Wilhoit, as an individual and in            *
official capacity; Vincent Ellis,                *
                                                 *
              Defendants - Appellees.            *

_____

Submitted: June 14, 2007
Filed: October 26, 2007

_____

Before BYE, RILEY, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

       David Hughes was a sergeant with the Missouri State Highway Patrol (MSHP) until he was demoted and transferred. Hughes brought a 42 U.S.C. § 1983 action against Roger D. Stottlemyre in his official capacity as MSHP Superintendent,[1] his immediate supervisors, Captain Vincent Ellis and Lieutenant James Ripley,

_____

[1]Stottlemyre is no longer a party to this action.

individually, and Eric Wilhoit, an investigator in the MSHP's Professional Standards Division, individually.  Hughes claimed Ellis, Ripley and Wilhoit violated his First Amendment free speech rights by retaliating against him for opposing proposed changes in MSHP policy.  The district court[2] granted defendants' motion for summary judgment finding Hughes failed to discredit the legitimate non-retaliatory reasons offered for his demotion and transfer.  Hughes appeals and we affirm.

I

The facts relevant to this appeal, viewed in the light most favorable to Hughes, Dush v. Appleton Elec. Co., 124 F.3d 957, 962-63 (8th Cir. 1997) (summary judgment standard), are as follows.[3]  In 2003, Hughes was a Zone Sergeant assigned to Bates County, Missouri.  His direct supervisor was Lieutenant Ripley who served in a supervisory role in Bates County and Cass County, Missouri.  Bates County and Cass County are located within the boundaries of the MSHP's Troop A, which was commanded by Captain Ellis.  In June 2003, the MSHP was considering consolidating Bates and Cass counties.  Hughes attended a meeting with Ellis and Ripley to discuss the proposed consolidation and expressed disagreement.  As an alternative, Hughes suggested one trooper from Bates County be reassigned to Cass County to relieve its personnel problems.  Ellis and Ripley favored consolidation and Ripley voiced dissatisfaction with Hughes's alternative plan, but Ellis delayed consolidation and temporarily adopted Hughes's suggestion. Following the meeting, Ripley was visibly angry and, at this point, according to Hughes, Ellis and Ripley began a campaign of retaliation.

[2]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

[3]For additional facts see Hughes v. Stottlemyre, 454 F.3d 791 (8th Cir. 2006) (Hughes I).

-2-

Hughes contends four disciplinary complaints initiated against him were brought in retaliation for his criticism of the consolidation plan. The first involved a trooper under Hughes's supervision who darted across a Missouri highway to kill a coyote and trespassed on private land to retrieve it. The complaint, initiated by Corporal Kevin Fisher, alleged Hughes told him to report the incident to Ripley but not volunteer any details. Additionally, the complaint alleged Hughes advised the trooper not to talk with investigators without a lawyer present.

The second complaint alleged Hughes ordered an on-duty trooper to transport Hughes's children to and from school on various occasions. The complaint further alleged Hughes also used his patrol vehicle to transport his children to and from school.

The third complaint alleged Hughes, at the behest of state senator Harold Caskey, ordered one of his troopers to retrieve license plates from a private vehicle held at an impound lot. The owner of the lot had not been paid for towing or storage charges and complained to Hughes. When interviewed by the investigator, the owner stated Hughes was rude and told him not to "mess with Senator Caskey."

The fourth complaint involved an incident where Hughes entered Fisher's residence to retrieve the keys to Fisher's patrol vehicle. Hughes's patrol vehicle had been damaged en route to a traffic accident and he needed a substitute. Fisher was off duty and his patrol vehicle was parked at his home a few miles away. Hughes drove to Fisher's home, entered the locked home using the keypad access code, and located the vehicle keys. Fisher admitted giving Hughes the access code on a previous occasion but had not otherwise given Hughes permission to enter his home.

The four complaints were initiated by Fisher but signed by Ripley or Ellis because MSHP rules do not permit a subordinate to sign a complaint involving a superior. Wilhoit investigated the complaints and interviewed Hughes who admitted

-3-

the essential factual allegations underlying each complaint.  Nevertheless, Hughes contends Ripley and Ellis used the complaints as an opportunity to retaliate against him and enlisted the aid of Wilhoit to further their plan.

In his first appeal, Hughes argued the district court granted summary judgment on a basis not advanced by defendants.  We agreed and reversed.  On remand, defendants renewed their motion for summary judgment, expressly arguing the complaints were initiated and investigated for legitimate non-retaliatory reasons.  The district court again granted summary judgment and this appeal followed.  On appeal, Hughes argues the district court erred in 1) applying McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) instead of Mt. Healthy Sch. Dist. v. Doyle, 429 U.S. 274 (1977), and 2) finding the legitimate non-retaliatory reasons offered by defendants were not pretextual.

II

We review the district court's grant of summary judgment de novo.  Henerey v. City of St. Charles, 200 F.3d 1128, 1131 (8th Cir. 1999).  Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Id.; Fed. R. Civ. P. 56(c).

To establish a prima facie case of retaliation based on the First Amendment, a plaintiff must allege and prove he engaged in conduct protected by the First Amendment and the protected conduct was a substantial or motivating factor in the employer's decision to take the adverse employment action.  Mt. Healthy, 429 U.S. at 287; Okruhlik v. Univ. of Ark., 395 F.3d 872, 878 (8th Cir. 2005) (noting the same

test applies to both First Amendment and Tile VII retaliation cases).[4]  Under the burden-shifting framework of McDonnell Douglas, 411 U.S. at 802-03, Hughes has the burden of establishing a prima facie case of retaliation.  After a prima facie showing is made, a presumption of retaliation arises, and the burden of production shifts to the employer to advance a legitimate reason for the employment action.  See Ryther v. KARE 11, 108 F.3d 832, 836 (8th Cir. 1997).  Once the employer advances a legitimate reason for the adverse action, the presumption drops out and "the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven that the defendant intentionally discriminated against the plaintiff."  Id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11(1993)).  In some situations, this can be shown indirectly by establishing the employer's proffered reason was a pretext for retaliation.  See Hicks, 509 U.S. at 507-08.  The ultimate burden of persuasion remains with the employee to show the adverse employment action was motivated by intentional retaliation.  Id. at 508.

Ellis, Ripley, and Wilhoit argue the complaints and investigations were not initiated or undertaken in retaliation for Hughes's protected speech.  They offer the affidavit and testimony of Fisher stating he alone initiated the complaints and was not coaxed or coached by Ellis or Ripley. Defendants also offer Wilhoit's affidavit stating he was unaware of Hughes's speech until Hughes filed suit, and did not discuss the matter with Ellis or Ripley prior to investigating the complaints.  In opposition, Hughes argues Fisher's affidavit and testimony are ambiguous and a reasonable trier of fact could conclude he was not the catalyst for the complaints.  Further, he argues, even assuming Fisher was the source of the complaints, Ellis and Ripely pursued them

---

[4]We reject Hughes's argument that our citation to Mt. Healthy in Hughes I suggests the burden-shifting framework of McDonnell Douglas is inapplicable to his claims.  See Stewart v. Indep. Sch. Dist. No. 196, 481 F.3d 1034, 1042-43 (8th Cir. 2007) ("Without direct evidence of a retaliatory motive, we analyze retaliation claims . . . under the burden-shifting framework of [McDonnell Douglas].").

with retaliatory motives. Finally, he claims Wilhoit conspired with Ellis and Ripley in pursuing the investigations which led to his demotion and transfer.

A review of the evidence demonstrates Fisher came forward with the damaging information without prodding from Ellis or Ripley, and we find nothing in the record to support Hughes's contrary claims. Similarly, we find no support for Hughes's conspiracy theory. Other than Hughes's unfounded speculation, nothing in the evidence supports a link between Wilhoit's investigations, Hughes's opposition to the policy change, and Ellis or Ripley. The uncontroverted evidence demonstrates the complaints were handled in accordance with established MSHP policy and the only involvement Ellis and Ripley had was to sign them and provide information when interviewed by Wilhoit. They neither supervised nor directed the investigations, and there is no evidence whatsoever indicating similarly situated members of the MSHP were treated differently. See Logan v. Liberty Healthcare Corp., 416 F.3d 877, 881 (8th Cir. 2005) (holding a showing of pretext requires more evidence than a prima facie showing because evidence of pretext and retaliation is viewed in light of the employer's proffered non-retaliatory reasons).

III

The judgment of the district court is affirmed.

_____