# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-2460

———————

Roxana Recio,                                      *
                                                   *
            Appellant,                             *
                                                   *   Appeal from the United States
      v.                                           *   District Court for the
                                                   *   District of Nebraska.
Creighton University,                              *
a Nebraska Nonprofit Corporation,                  *
                                                   *
            Appellee.                              *

———————

Submitted: December 10, 2007
Filed: April 8, 2008

———————

Before LOKEN, Chief Judge, WOLLMAN, and SHEPHERD, Circuit Judges.

———————

SHEPHERD, Circuit Judge.

Appellant Roxana Recio filed this action, alleging that her employer, Creighton University, retaliated against her for filing a discrimination charge. Creighton moved for summary judgment, asserting that Recio had failed to demonstrate the materially adverse action and causation elements of a prima facie case of retaliation and that, even if she had, there was no evidence that Creighton's legitimate explanations for the

alleged acts of retaliation were a pretext for retaliation. The district court[1] granted summary judgment to Creighton, and Recio appeals. We affirm.

## I.

Creighton University is a private university in Omaha, Nebraska. In 1994, Creighton hired Dr. Roxana Recio as an Associate Professor of Spanish in the Department of Modern Languages and Literatures (the "Department") in the College of Arts and Sciences (the "College"). Recio is of Spanish origin and a naturalized citizen. Creighton also hired Recio's husband, Dr. Enrique Rodrigo, as a Spanish professor. In 1998, Recio was granted tenure as an Associate Professor. As of the time this court heard oral argument in this case, both Recio and her husband retained their positions at Creighton.

In January 2001, members of the Department, including Recio, interviewed Michelle Evers, a candidate for a Spanish professorship. Recio and Evers then engaged in email correspondence that continued from January 2001 to April 2001. Creighton hired Evers; she began teaching in August 2001. Two-and-a-half years later, on February 10, 2004, the Spanish faculty held a section meeting that was attended by both Recio and Evers. On February 12, 2004, Recio made a written complaint about Evers's behavior at the meeting as well as problems that Recio was experiencing in the Department. On February 18, 2004, Evers sent a letter to the dean of the College, stating that she had received "inappropriate and offensive" communications from Recio. The communications referenced by Evers consisted of some of the emails Recio had sent Evers from January to April 2001.

---

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

On March 17, 2004, Evers formally complained to Creighton that Recio had sexually harassed her, alleging that: (1) in 2001, shortly after Evers interviewed for employment as a faculty member at Creighton, Recio sent her a series of "obsessive, stalker-like" email communications and made "inappropriate advances . . . of a strong sexual nature"; (2) when Evers ended email contact with Recio, Recio "repeatedly and relentlessly tried to re-initiate contact"; and (3) Evers believed that the portion of Recio's February 2004 complaint concerning Evers was in retaliation for Evers's refusal to communicate with Recio. Pursuant to Creighton's policies and procedures, a four-person Sexual Harassment Committee (the "Committee") heard evidence and, on April 22, 2004, issued a report to Creighton's president, Rev. John Schlegel, S.J. ("Fr. Schlegel"). The Committee recommended that Recio's employment be terminated. Although Fr. Schlegel concluded that the Committee's report had "substantial merit," he did not terminate Recio. Rather, on May 12, 2004, Fr. Schlegel placed Recio on probation until May 31, 2005, conditioning her continued employment on Recio: (1) having no communication or contact with Evers; (2) making no statements to others about Evers; (3) completing a program of psychological counseling, approved by the Dean and at her own cost, "for a period of one year ending May 31, 2005"; (4) attending an educational program, also approved by the dean, "dealing with issues of communication, appropriate interaction with others, teamwork, etc."; and (5) submitting to close monitoring and documentation of her conduct in the classroom, attendance at classes, scheduling and maintaining of office hours for students, and her interactions with faculty throughout the year of probation.

Recio and her husband spent the summer of 2004 in Spain, as they had done every summer for the 10 years they had been at Creighton. On July 14, 2004, Recio dual-filed with the Nebraska Equal Opportunity Commission ("NEOC") and the Equal Employment Opportunity Commission ("EEOC"), alleging that Creighton's imposition of probation was based on her Spanish national origin. Creighton received notice of the complaint on July 26, 2004. On August 9, 2004, Creighton wrote Recio

to notify her that, because she could not commence the counseling program specified by the terms of her probation while she was in Spain, the one-year program would begin upon her commencement of the program after her return.

On April 15, 2005, when College faculty were to receive their employment contract for the following year, the dean notified Recio that her contract would be delayed because he needed to confer with general counsel as to the appropriate form of her contract as a result of her probationary status. On April 22, 2005, the dean sent Recio a new employment contract that required her agreement to the terms of the August 9, 2004 letter regarding the duration of the counseling program. The dean also noted that, because Recio was again planning to spend the summer of 2005 in Spain, her one-year counseling requirement would not be completed until she resumed counseling upon her return from Spain. Recio, through counsel, objected to the contract's language, and an agreement was reached in which Recio's employment contract stated only that she was "on probation through May 31, 2005." A separate letter agreement addressed the counseling requirement.

On May 10, 2005, Recio dual-filed a second complaint with the NEOC and the EEOC, alleging that Creighton had retaliated against her for filing the July 2004 discrimination charge. Recio completed her probation on May 31, 2005, with no violations. On June 15, 2005, the NEOC, having completed its investigation of the July 2004 discrimination charge, issued a Determination of No Reasonable Cause, stating that "[t]here [was] no evidence to show that the level of discipline was based on [Recio's] national origin."[2] On May 3, 2006, the NEOC terminated the processing of the retaliation charge and, at Recio's request, issued a right-to-sue letter.

---

[2]When a claimant dual-files with the NEOC and the EEOC, he or she can write to the EEOC and request a substantial weight review within 15 days of the NEOC's decision. See http://www.neoc.ne.gov/faq/faq.htm (last visited Apr. 1, 2008). The EEOC will then examine the case and render its determination. See id. Here, the record provides no indication that Recio requested an EEOC review.

Recio filed this action on May 10, 2006, alleging that Creighton retaliated against her for the filing of the July 2004 discrimination complaint in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). 42 U.S.C. §§ 2000e to 2000e-17. Recio seeks injunctive relief prohibiting Creighton from discriminating against her for engaging in conduct protected by Title VII, damages in excess of $100,000, and other relief. Recio's complaint alleges 21 acts of retaliation but she does not challenge the process Creighton used that resulted in her discipline for alleged misconduct or raise any issue of discrimination based on her national origin. The district court divided the alleged retaliatory actions into acts that preceded Recio's retaliation charge and those that followed the charge. However, we note that, in determining whether Creighton retaliated against Recio for filing the July 2004 discrimination complaint, the basis of this Title VII action, it is the date of the July 2004 complaint, not the May 2005 retaliation complaint, that is key.

The district court granted Creighton's motion for summary judgment, finding that Recio failed to show two of the three elements of a prima facie case of retaliation: (1) the materially adverse element–that a reasonable employee would have found the allegedly retaliatory actions to be materially adverse and (2) the causation element–that Creighton's allegedly retaliatory actions were causally linked to her protected conduct. The district court further found that, even if Recio had demonstrated a prima facie case, Creighton had offered legitimate reasons for each of the 21 allegedly retaliatory actions, and Recio had not provided any evidence that Creighton's reasons were pretexts for retaliation. Recio brings this appeal.

II.

On appeal, Recio contends that the district court erred in granting summary judgment to Creighton because she demonstrated a prima facie case of retaliation and made a showing of pretext, rebutting Creighton's stated legitimate reasons for the allegedly retaliatory actions. Recio further claims that the district court erred by

failing to identify the significant number of disputed issues of material fact present in this case; resolving factual disputes in Creighton's favor by inappropriately drawing factual inferences and determinations of credibility in a light most favorable to Creighton; and applying a standard of review improperly slanted in favor of Creighton. We review the district court's grant of summary judgment de novo, taking the evidence in the light most favorable to Recio, as the nonmoving party. Harris v. Brownlee, 477 F.3d 1043, 1046 (8th Cir. 2007).

III.

Title VII prohibits retaliation against employees who initiate or participate in a proceeding or investigation that claims their employer violated Title VII. 42 U.S.C. § 2000e-3(a). Under the McDonnell Douglas burden-shifting framework, Recio must first demonstrate a prima facie case of retaliation. Hughes v. Stottlemyre, 506 F.3d 675, 678-79 (8th Cir. 2007) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973)). "A prima facie case of retaliation requires showing that: (1) the employee engaged in protected conduct; (2) reasonable employees would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct." Brenneman v. Famous Dave's of Am., Inc., 507 F.3d 1139, 1146 (8th Cir. 2007). Upon a prima facie showing, "a presumption of retaliation arises, and the burden of production shifts to the employer to advance a legitimate reason for the employment action." Hughes, 506 F.3d at 679. If the employer does so, "the presumption drops out and 'the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven that the defendant intentionally discriminated against the plaintiff.'" Id. (quoting Ryther v. KARE 11, 108 F.3d 832, 836 (8th Cir. 1997) (en banc)). However, "[t]he ultimate burden of persuasion remains with the employee to show the adverse employment action was motivated by intentional retaliation." Id.

The first element of Recio's prima facie case of retaliation has been met here because she filed a charge of national origin discrimination against Creighton in July 2004. The second element, the materially adverse element, is disputed. On appeal, we can discern nine actions that Recio claims Creighton engaged in and are materially adverse: (1) extending the duration of the counseling requirement of her probation in August 2004 and April 2005; (2) requiring that she maintain a Monday, Wednesday, and Friday ("M-W-F") teaching schedule; (3) shunning by faculty; (4) failing to provide her prior notification of a vacancy in the Spanish faculty; (5) keeping the temperature in her office too cold; (6) requiring her to acknowledge her probation in her employment contract; (7) failing to assign her to teach advanced classes; (8) denying her the opportunity to teach summer courses; and (9) denying her opportunities to participate in a study program in Spain.

A few of Recio's allegations, that Creighton twice extended the duration of the counseling program imposed by her probation and denied her the opportunity to teach summer courses, must be dismissed at the outset because she has not offered any facts indicating that Creighton actually took such actions. See Haas v. Kelly Servs., Inc., 409 F.3d 1030, 1036 (8th Cir. 2005) ("Evidence, not contentions, avoids summary judgment." (quoting Mayer v. Nextel West Corp., 318 F.3d 803, 809 (8th Cir. 2003))). Recio admits that she has spent every summer in Spain since joining the faculty at Creighton, thus, there is no indication that she has been denied an opportunity to teach summer courses at Creighton. With regard to the duration of Recio's counseling requirement, Recio's May 2004 probation imposed a year-long counseling requirement that would be completed on May 31, 2005. However, Recio did not begin attending counseling sessions in May 2005 because she took her annual trip to Spain during the summer of 2004. In August 2004, Creighton recognized that Recio would not be able to complete the one-year counseling program on May 31, 2005 and advised her that she was still required to complete a year-long program. Creighton also requested notification of the date of Recio's first counseling session because the one-year requirement would be imposed from that date, resulting in a new completion

date for the counseling requirement. Similarly, the April 2005 notification merely acknowledged the impact of Recio's impending trip to Spain for the summer of 2005 on the counseling requirement. Thus, the August 2004 and April 2005 notifications did not impose an extension of the original year-long counseling requirement of Recio's probation. Rather, the date of completion merely shifted in accordance with Recio's voluntary decisions to begin the sessions after the summer of 2004 and suspend the sessions during the summer of 2005.

We next address whether any of Recio's remaining allegations satisfy the materially adverse element. This element is objective such that we must determine whether any of the actions challenged here "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 2415 (2006) (quotation omitted). Most of the allegations, a two-month delay between the time Recio was notified of a vacancy in the Spanish faculty compared with the rest of the faculty, keeping the temperature in her office too cold, requiring her to acknowledge her probation in her employment contract, and denying her the opportunity to participate in a study program in Spain, "are akin to the sort of trivial harms that do not rise to the level of retaliation," Weger v. City of Ladue, 500 F.3d 710, 728 (8th Cir. 2007), and even fall short of those which this court has previously found lacking. See Clegg v. Ark. Dept. of Corr., 496 F.3d 922, 929-30 (8th Cir. 2007) (lower performance evaluation; employer's failure to provide Clegg with employment tools, notice of new department policies, and not immediately having her attend certain meetings; temporary remedial training done in order to help her improve on her next evaluation; and denial of permission to attend one training session insufficient); Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 786-87 (8th Cir. 2007) (supervisor's presence on delivery route manager's truck; assignment of poorly organized substitute truck; unfair issuance of written notice for failing to turn in customer postcards; false report that she had twice as many customer complaints as other route managers; and employer's refusal to assign her a route builder who would accompany her and obtain

new customers insufficient). The allegations that come closest to articulating a potentially significant harm are Recio's contentions that Creighton altered her teaching schedule, that she was shunned by faculty, and that Creighton failed to assign her to teach advanced classes.

Recio contends that she suffered a materially adverse action when Creighton notified her on August 31, 2004 that, though she would be able to maintain her Tuesday-Thursday ("T-Th") teaching schedule for the Fall 2004 semester, she would have a M-W-F class schedule during the Spring 2005 semester. Recio and her husband were the only members of the Spanish faculty that taught on a T-Th schedule. On September 3, 2004, Recio wrote the Department chair that "[she] would prefer to teach during Tuesdays and Thursdays, which is the schedule that fits best for [her] work habits." Despite Recio's complaint, she and her husband taught on a T-Th schedule in the Fall of 2004 and, along with all Spanish faculty, maintained a M-W-F schedule for the Spring 2005 semester. The mere fact that Creighton disallowed Recio from maintaining her preferred teaching schedule, without any indication that Recio suffered a material disadvantage as a result of the action, does not "meet the significant harm standard set forth in Burlington Northern." Clegg, 496 F.3d at 929; see Higgins v. Gonzales, 481 F.3d 578, 584 (8th Cir. 2007) ("Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage do not satisfy the [materially adverse] prong.").

Also, the instances of ostracism that Recio experienced amount to no more than "nonactionable petty slights" under Burlington Northern. 126 S. Ct. at 2415. Recio alleges that she received "the silent treatment," Appellant's Br. at 60, from other faculty and was excluded (along with her husband) from a picture of the Spanish faculty posted on its website in December 2004. Ostracism of this variety is not materially adverse. See id. at 2415-16 ("A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the

employee's professional advancement might well deter a reasonable employee from complaining about discrimination."); see also Somoza v. Univ. of Denver, 513 F.3d 1206, 1218 (10th Cir. 2008) ("[Plaintiffs] may have had to withstand colleagues that do not like them, are rude, and may be generally disagreeable people. However, [a] court's obligation is not to mandate that certain individuals work on their interpersonal skills and cease engaging in inter-departmental personality conflicts.").

Next, though there may be some fact situation where a professor is denied the opportunity to teach advanced classes in a way that so hinders her professional career that it constitutes a materially adverse action, we need not decide whether that is the case here because Recio has failed to demonstrate a causal connection between her discrimination complaint and her course assignments. The relevant time period is from July 26, 2004, when Creighton received notice of Recio's discrimination complaint, onward. Recio first raised the allegation of preferential teaching assignments to other faculty in October 2001. Creighton's actions at that time cannot be causally connected to Recio's discrimination complaint as a matter of law because Recio had not yet engaged in any protected activity. See Culton v. Mo. Dept. of Corr., 515 F.3d 828, 831 (8th Cir. 2008) (finding the plaintiff's "failure to present any evidence that [his supervisor] was aware of [his] protected activities [was] fatal to [employee's] retaliation claim").

In addition, Recio offers some evidence indicating that she was assigned fewer advanced level courses than other Spanish faculty during the Spring 2005 to Fall 2007 semesters. However, she failed to show any nexus between such evidence and her discrimination complaint. Generally this court requires more than a mere temporal connection in order to infer causation, Green v. Franklin Nat. Bank of Minneapolis, 459 F.3d 903, 915 (8th Cir. 2006), and the temporal connection here, six months, is not close enough to raise an inference of causation. See Weger, 500 F.3d at 726 ("Though not dispositive, we have previously 'held that an interval as brief as two months did not show causation for purposes of establishing a retaliation claim, . . . and

that a two-week interval was sufficient, but barely so . . . .'" (internal quotation and citation omitted)).  Recio's inability to show a link between her course assignments and her discrimination complaint is further demonstrated by:  (1) the fact that this issue has a history preceding Recio's protected conduct and (2) Recio's concession on September 3, 2004 (about six weeks after her complaint) that she "ha[d] no problem with the course levels . . . assigned to [her]," for the Fall 2005 semester, the semester closest in time to her complaint.  Joint Appendix at 125.  In sum, Recio has not shown a causal connection between her discrimination complaint and her teaching assignments.  Accordingly, Recio has failed to establish a prima facie case of retaliation.[3]

Finally, the record evinces no basis for Recio's contentions that a multitude of disputes of material fact are present in this case, that the district court improperly viewed the facts by resolving disputes in favor of Creighton, or that the standard of review was improperly slanted in favor of Creighton.  Summary judgment in favor of Creighton was appropriate.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

_____

---

[3]Because we find Recio failed to demonstrate a prima facie case of retaliation, we need not address the issue of whether alleged retaliation against Recio's husband is relevant to her claim where the allegations relating to him mirror those raised by Recio; nor do we need to address the issue of whether the district court erred in finding that, even if Recio had made a prima facie showing, summary judgment in favor of Creighton was proper because Creighton had offered legitimate  reasons for each of the allegedly retaliatory actions, and Recio had not produced any evidence that Creighton's reasons were pretexts for retaliation.