# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3328

_____

| | | |
|---|---|---|
| Rhonda Tenkku, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Normandy Bank, | * | |
| | * | |
| Defendant - Appellee, | * | |

_____

Submitted: September 11, 2003

Filed: November 7, 2003

_____

Before LOKEN, Chief Judge, HEANEY and HANSEN, Circuit Judges.

_____

LOKEN, Chief Judge.

In April 1996, Normandy Bank of St. Louis gave its vice president and cashier, Rhonda Tenkku, a negative performance review and placed her on probation for six months. Seven weeks later, Tenkku resigned to accept a higher-paying job in Tennessee. Tenkku then commenced this action against Normandy Bank, alleging sex discrimination in violation of the Equal Pay Act, Title VII, and the Missouri Human Rights Act (MHRA). See 29 U.S.C. § 206(d); 42 U.S.C. § 2000e-3(a); Mo. Rev. Stat. §§ 213.010 et seq. After protracted discovery proceedings, the district

court[1] granted summary judgment in favor of Normandy Bank. Tenkku appeals the grant of summary judgment and the district court's earlier discovery and sanction orders. Reviewing the grant of summary judgment de novo, see Buettner v. Arch Coal Sales Co., 216 F.3d 707, 713 (8th Cir. 2000), cert. denied, 531 U.S. 1077 (2001), and the earlier orders for abuse of discretion, we affirm.

## I. Summary Judgment Issues.

Tenkku joined Normandy Bank as an auditor in 1981. She was later made director of marketing and a vice president of the bank. In 1991, Normandy Bank fired another vice president, Randy Meyer. Tenkku assumed Meyer's duties as cashier, which placed her in charge of the bank's accounting department. In mid-1995, Tenkku learned from a former employee that she and two other female vice presidents were being paid about $10,000 per year less than Meyer and the remaining male vice presidents. Tenkku met with Robert Kueker, her supervisor, and Robert Levin, the bank president, to complain of the wage disparity. Tenkku testified that when she expressed her hope that management would resolve the wage disparity issue internally, Levin responded, "if we have to go to outside agencies then obviously we are not the right people for these jobs." Tenkku interpreted that as a threat of termination if she filed a charge of discrimination.

In response to Tenkku's complaint, Kueker analyzed the salaries and responsibilities of Normandy Bank's officers, consulted trade association surveys to compare those salaries with similar positions in the region, and concluded that Normandy Bank's salary policy was not discriminatory. Tenkku then filed a charge of wage and retaliation discrimination with the Missouri Commission on Human

---

[1]The HONORABLE TERRY I. ADELMAN, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was assigned with the consent of the parties. See 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b).

Rights in November 1995, alleging that her complaint to management of wage discrimination "was subject to a demeaning and disparaging response threatening my job." Normandy Bank received notice of the charges in early February 1996.

In January and February 1996, Normandy Bank's certified public accountants conducted their annual audit, and FDIC bank examiners conducted a periodic examination of the bank. The auditors met with Kueker and Levin in late January to report numerous problems with Tenkku's supervision of the accounting department, including deficiencies in specific accounts. The auditors later reported that, in late February, they met with the FDIC examiners to correct erroneous entries Tenkku had made to the retained earnings account, resulting in a net credit to retained earnings of over $80,000. In addition, the auditors reported, "the FDIC examiners were not pleased with the documentation or lack thereof supporting the Call Report or any of the other accounting information received from [Tenkku]." Tenkku was passed over for a raise in February or March 1996.

On April 10, 1996, Tenkku received her annual performance review, which included placing her on six months probation. She responded in writing, conceding some deficiencies, blaming most problems on staff shortages and the bank's new software, and requesting that "the review be reconsidered in light of the extenuating circumstances." On May 6, Tenkku filed an amended charge of discrimination alleging that she had been the subject of an unwarranted and retaliatory review and probation. In late May she resigned and again filed an amended charge of discrimination, adding a constructive discharge allegation. This lawsuit followed.

**A. Equal Pay Act and Wage Discrimination Claims.** To recover under the Equal Pay Act, Tenkku must prove that Normandy Bank discriminated on the basis of sex by paying different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). If

Tenkku meets this burden, Normandy Bank may avoid liability by proving any of the four statutory affirmative defenses. See Corning Glass Works v. Brennan, 417 U.S. 188, 195-97 (1974) (explaining the respective burdens of proof). Thus, our inquiry turns on whether Tenkku presented sufficient evidence that she and her male colleagues performed "equal work in jobs that required equal skill, effort, and responsibility" and were "performed under similar conditions." Buettner, 216 F.3d at 719. Normandy Bank's potential affirmative defenses, on which it bears the burden of proof, are not at issue.[2]

Tenkku first argues that her work was substantially equal to that of her predecessor as cashier, Randy Meyer, who was paid a considerably larger salary. But it is undisputed that Meyer had seven more years of experience at Normandy Bank than Tenkku. More significantly, Normandy Bank submitted uncontroverted evidence that Meyer's job included numerous functions in addition to that of cashier. When Meyer was terminated, Tenkku assumed his cashier duties, but his other functions were spread among other officers, as one would expect when an employer reduces its payroll by firing an officer deemed expendable. In these circumstances, Tenkku's conclusory allegation that her total work responsibilities were equivalent to those performed by Meyer is insufficient to survive summary judgment. See Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 683-84 (8th Cir. 2001).

---

[2]In 29 C.F.R. § 1620.13(b)(2), the EEOC guidelines seemingly fail to recognize the difference between proof of an Equal Pay Act claim, and proof of a Title VII claim by indirect evidence under the McDonnell Douglas burden-shifting formula. An Equal Pay Act plaintiff's prima facie case -- that is, one that will avoid summary judgment -- consists of sufficient evidence the employer paid different salaries to men and women for equal work performed under similar conditions. At the summary judgment stage of the proceedings, the employer's justification for the differences is irrelevant, unless it is strong enough to establish one of the statutory affirmative defenses as a matter of law. But the plaintiff's prima facie case may not be credited by the fact-finder at trial, whether or not defendant offers an affirmative defense.

Tenkku next argues that Normandy Bank violated the Equal Pay Act by failing to pay her as much as its remaining male vice presidents. Each vice president was responsible for a distinct department within Normandy Bank. Tenkku submitted no evidence comparing the male vice presidents' disparate responsibilities with her responsibilities as vice president and cashier. Instead, she relies on her opinion "that if someone is going to be promoted to the title of vice president they should have sufficient duties and responsibility to warrant a vice president's pay." However, "neither job classifications nor titles are dispositive for determining whether jobs are equal for purposes of [the Equal Pay Act] and Title VII." Hunt v. Neb. Pub. Power Dist., 282 F.3d 1021, 1029 (8th Cir. 2002). Thus, summary judgment was appropriate. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Tenkku also asserts wage discrimination claims under Title VII and the MHRA. Title VII wage discrimination claims based on unequal pay for equal work are analyzed under Equal Pay Act standards. See Buettner, 216 F.3d at 718-19, and cases cited. To that extent, Tenkku's Title VII and MHRA claims fare no better than her Equal Pay Act claim. In addition, the Supreme Court has held that an employer violates Title VII, but not the Equal Pay Act, if it intentionally depresses wages on account of sex and there were no employees of the opposite sex doing equal work for more pay. County of Washington v. Gunther, 452 U.S. 161 (1981). Although Tenkku argues that Normandy Bank's response to her wage complaint evidenced intentional sex discrimination, she does not cite County of Washington v. Gunther, and she bases her wage discrimination case on a comparison of the wages paid to Normandy Bank vice presidents of opposite sexes. Accordingly, her Title VII and MHRA claims must be considered under Equal Pay Act standards, and the district court properly granted summary judgment dismissing those claims.

**B. Retaliation Discrimination Claims.** Title VII prohibits an employer from discriminating against any employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a). A prima facie case of retaliation discrimination requires a showing that plaintiff engaged in conduct protected by Title VII and suffered an adverse employment action that was "causally linked to the protected conduct." Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir.) (en banc), cert. denied, 528 U.S. 818 (1999). Tenkku's wage complaints to Normandy Bank management and her November 1995 charge of discrimination were protected conduct. The district court assumed that Tenkku suffered adverse employment actions when she was denied a raise and placed on probationary status in early 1996. But the court granted summary judgment dismissing this claim because "there is no evidence of causality."

On appeal, Tenkku argues that in April 1996 she "was singled out for a special detailed review to have her employment terminated unless some undefined progress was made." But she presented no evidence this review was anything other than a regular annual performance review, similar to the poor review she received as cashier in 1993, two years before the meeting with Kueker and Levin to discuss her salary concerns, and more than two years before she filed her initial charge with the EEOC. In January and February 1996, Normandy Bank's independent auditors strongly criticized her oversight of the accounting department, identifying specific accounting deficiencies. The auditors reported that the FDIC bank examiners had been critical as well. These specific criticisms by knowledgeable, independent third parties warranted deferring Tenkku's raise in February 1996 and were cited in the April 1996 performance review as the basis for placing her on six-month probation. These "intervening unprotected [events] eroded any causal connection that was suggested by the temporal proximity" of her protected conduct in 1995 and the adverse employment actions in 1996. Kiel, 169 F.3d at 1136. In these circumstances, the

district court properly granted summary judgment dismissing Tenkku's retaliation claims.

**C. Constructive Discharge.** Finally, Tenkku claims she was constructively discharged by Normandy Bank when its intolerable atmosphere forced her to resign in late May 1996 to take a higher paying job. "An employee is constructively discharged when an employer deliberately renders the employee's working conditions intolerable and thus forces [her] to quit [her] job." West v. Marion Merrell Dow, Inc., 54 F.3d 493, 497 (8th Cir. 1995) (quotation omitted). Having failed to prove her claims of wage and retaliation discrimination, Tenkku "has not established the underlying illegality necessary to support a constructive discharge claim." Barrett v. Omaha Nat'l Bank, 726 F.2d 424, 428 (8th Cir. 1984). Moreover, given the criticism of her job performance by the independent auditors and FDIC examiners, Tenkku has totally failed to prove that the six-month probationary period established just seven weeks before she resigned was part of a plan to force her to quit. "An employee who quits without giving her employer a reasonable chance to work out a problem is not constructively discharged." West, 54 F.3d at 498.

## II. Discovery and Sanction Issues.

In May 1996, the FDIC sent its official report of the February 1996 examination to Normandy Bank. The report was furnished to Tenkku before she resigned, and she kept a copy when she left the bank. During discovery, the FDIC claimed ownership of the report. The court ordered Tenkku to return her copy, and the FDIC then produced a redacted copy for use in the litigation. Tenkku moved for an order compelling the FDIC to provide her a copy of the full report, and both sides moved for discovery sanctions. The court granted the FDIC's motion for sanctions and subsequently ordered Tenkku to pay $1,305.56 to reimburse the FDIC for its costs and attorney's fees in defending against her frivolous motion to compel. We dismissed an interlocutory appeal of the discovery and sanction orders for lack of

jurisdiction. <u>Tenkku v. Normandy Bank</u>, 218 F.3d 926 (8th Cir. 2000). Tenkku again appeals those orders.

**A. The Discovery Order.** Tenkku argues that the district court erred in ordering her to return her copy of the FDIC examination report and in allowing the agency to produce redacted portions of the report in discovery. This contention is without merit. We will not reverse a district court's discovery ruling "absent a gross abuse of discretion resulting in fundamental unfairness in the trial of the case." <u>McGowan v. Gen. Dynamics Corp.</u>, 794 F.2d 361, 363 (8th Cir. 1986) (quotation omitted). Here, Tenkku has not explained how any portion of the FDIC report that was withheld from discovery would have enabled her to avoid summary judgment by establishing a prima facie case of either wage or retaliation discrimination. Without such a showing, there was no abuse of the district court's substantial discretion in conducting the discovery phase of the litigation. <u>See</u> 6 MOORE'S FEDERAL PRACTICE § 26.07[5] (3d ed. 2003).

**B. The Sanction Orders.** In response to Tenkku's supplemental motion for production of the full FDIC report, for sanctions, and for an order holding the FDIC in contempt, the FDIC filed a cross motion for sanctions. The agency argued that Tenkku's motion "represents a continuing pattern of unreasonable and vexatious conduct" by Tenkku's counsel that warranted sanctions under Rule 11 of the Federal Rules of Civil Procedure and under 28 U.S.C. § 1927, which authorizes sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." The district court granted the FDIC's motion. After the FDIC submitted a declaration reciting its attorney time and costs in defending Tenkku's motion, the district court ordered "that plaintiff pay $1,305.56 to the FDIC."

Section 1927 warrants sanctions when an attorney's conduct "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." <u>Perkins v. Spivey</u>, 911 F.2d 22, 36 (8th Cir. 1990) (quotation omitted),

cert. denied, 499 U.S. 920 (1991). In imposing sanctions under § 1927, the district court must make findings and provide an adequate explanation so that we may review its determination that sanctions were warranted. See Lee v. L.B. Sales, Inc., 177 F.3d 714, 718-19 (8th Cir. 1999). "We review the district court's factual findings for clear error and its decision to award sanctions for an abuse of discretion." Lee v. First Lenders Ins. Servs., Inc., 236 F.3d 443, 445 (8th Cir. 2001).

In this case, the district court found that Tenkku's counsel filed the motion for sanctions one day after demanding "the full report" from the FDIC. The court explained that this motion, "while frivolous of its own accord, is the latest example of a pattern of unnecessary and hostile pleadings the court has been forced to review in this matter," all of which "created unnecessary and protracted delays in discovery." The record supports the court's findings, and its decision to award the FDIC the costs and fees it incurred in defending one frivolous motion was not an abuse of the court's substantial discretion. However, as there was no showing that Tenkku violated Rule 11 or vexatiously multiplied the proceedings, the court erred in imposing the sanction on Tenkku, as opposed to her counsel.

Tenkku argues that a hearing was necessary before the court imposed sanctions. However, the record reflects that Tenkku and her counsel were afforded ample notice and opportunity to be heard on the question whether a sanction should be imposed and the amount of the sanction. See Martens v. Thomann, 273 F.3d 159, 178 n.13 (2d Cir. 2001); cf. Chrysler Corp. v. Carey, 186 F.3d 1016, 1022 (8th Cir. 1999) (dealing with Rule 37 discovery sanctions). Tenkku further argues that the FDIC failed to establish the reasonableness of the attorney's fees it requested for defending the frivolous motion. We have carefully reviewed the FDIC's submission and conclude the district court did not abuse its discretion in awarding $1,305.56 as a reasonable sanction. In isolating the costs and fees a party has incurred because of conduct that violated § 1927, "precision is not required." Lee, 236 F.3d at 446.

The judgment of the district court is affirmed.  The last paragraph of the court's order dated February 9, 1999, is modified to provide "that plaintiff's counsel, Susan H. Mello, pay $1,305.56 to the FDIC . . . ."

_____