# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-1221

———————

Willie Littleton,

    Plaintiff - Appellant,

v.

Pilot Travel Centers, LLC,

    Defendant - Appellee.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Eastern District of Arkansas.
\*
\*
\*

———————

Submitted: December 12, 2008
Filed: June 4, 2009

———————

Before LOKEN, Chief Judge, BEAM, Circuit Judge, and KYLE,* District Judge.

———————

LOKEN, Chief Judge.

Willie Littleton, an African-American, sued his employer, Pilot Travel Centers ("Pilot"), for race discrimination and retaliation in violation of Title VII, 42 U.S.C. §§ 2000e-2(a), 3(a), and the Arkansas Civil Rights Act ("ACRA"), Ark. Code Ann. § 16-123-101 *et. seq.* The district court[1] granted Pilot summary judgment on the retaliation claims, denied summary judgment on the race discrimination claims, and

---

*The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation.

[1]The HONORABLE GEORGE HOWARD, JR., United States District Judge for the Eastern District of Arkansas.

held a bench trial on the latter claims. Judge Howard died before issuing a post-trial decision, and the case was reassigned. After review, the district court[2] found that Littleton failed to prove that Pilot's legitimate, non-discriminatory reason for not giving him two pay raises was a pretext for unlawful race discrimination. The court denied Littleton's motion for reconsideration and entered final judgment for Pilot. Littleton appeals these rulings. We analyze Title VII and ACRA claims in the same manner. Clegg v. Ark. Dept. of Corr., 496 F.3d 922, 926 (8th Cir. 2007). We affirm.

## I. The Retaliation Claims.

At the time in question, Littleton worked as a fuel truck driver in West Memphis, Arkansas, delivering diesel fuel from Pilot's fuel suppliers to its retail Travel Centers and to large independent customers. West Memphis drivers reported to Regional Transportation Manager Randy Dyer, who reported to Director of Transportation David Breeding. These Transportation Department supervisors had no authority over Travel Center operations.

Littleton filed a race discrimination charge with the EEOC in February 2003, alleging he was denied pay raises given to similarly situated white employees. Seven months later, Tommy Bradshaw, Manager of the West Memphis Travel Center, complained to Breeding about Littleton's conduct at the Travel Center. Breeding referred the customer complaint to Dyer to investigate. Dyer contacted Bradshaw, who reported that Ben Crow, an assistant manager, complained that Littleton, while in the Travel Center after delivering fuel, was spreading rumors that Crow was dishonest and gay. Bradshaw told Dyer he had interviewed other Travel Center employees, who likewise complained of harassment and mistreatment by Littleton.

---

[2]The HONORABLE JAMES M. MOODY, United States District Judge for the Eastern District of Arkansas.

-2-

After discussing Bradshaw's complaint with Breeding and the Director of Human Resources, Dyer issued Littleton a "Correction Notice." In the printed "reason for corrective action" portion of the form, Dyer wrote, "Disruptive interpersonal behavior," "Creating rumors," "Inappropriate sexual innuendo," "Creating a potentially hostile work environment," and "Making false claims." In the "Future Action if problem is not corrected" portion of the form, Dyer wrote, "Failure to correct & not repeat these issues will result in immediate termination of employment." Littleton signed the form to acknowledge receipt but wrote that he disagreed with the "fabricated and slanderous charges" and asked "to confront my accusers." He then filed a second charge with the EEOC alleging that the Correction Notice was illegal retaliation for his earlier charge. The EEOC dismissed the retaliation charge after its investigation failed to establish a violation and issued a right to sue letter on the initial charge of race discrimination.

Judge Howard granted Pilot summary judgment on the retaliation claims, concluding that Littleton failed to demonstrate two elements of a prima facie case of retaliation -- an adverse employment action and a causal connection between the adverse action and Littleton's protected activity. The court noted no evidence that complainant Bradshaw knew of Littleton's protected activity, and no evidence that Pilot "subsequently used the Correction Notice to alter plaintiff's employment," as required by Eighth Circuit cases such as Henthorn v. Capitol Commc'ns, Inc., 359 F.3d 1021, 1028 (8th Cir. 2004).

Before trial of the race discrimination claims, the Supreme Court decided Burlington Northern & Santa Fe Railway v. White, 548 U.S. 53 (2006), which modified the Eighth Circuit's element of an adverse employment action. Under Burlington Northern, a prima facie case of retaliation requires a showing that the alleged retaliatory action was materially adverse, that is, the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 548 U.S. at 68 (quotation omitted). After the district court's adverse post-trial

decision, Littleton filed a motion to reconsider dismissal of the retaliation claims based on Burlington Northern's change in Eighth Circuit law. Judge Moody denied this motion because Littleton had failed to show that "significant harm" resulted from the Correction Notice. Littleton appeals the dismissal of the retaliation claims. He argues that the Correction Notice, "an express threat to his continued employment," was a materially adverse action that might have dissuaded a reasonable employee from engaging in protected activity, and that evidence of Pilot's "sham" investigation of false Travel Center accusations established a prima facie case of illegal retaliation and sufficient evidence of pretext to warrant trial of the claims. We review the grant of summary judgment *de novo*.

The material adverse action issue is difficult. Our post-Burlington Northern decisions have consistently held that, to be materially adverse, retaliation cannot be trivial; it must produce some "injury or harm." Gilbert v. Des Moines Area Cmty. Coll., 495 F.3d 906, 917 (8th Cir. 2007). Thus, we have concluded that commencing performance evaluations, or sending a critical letter that threatened "appropriate disciplinary action," or falsely reporting poor performance, or "lack of mentoring and supervision" were actions that did not establish a prima facie case of retaliation, absent showings of materially adverse consequences to the employee. See Weger v. City of Ladue, 500 F.3d 710, 727 (8th Cir. 2007); Gilbert, 495 F.3d at 917; Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 786 (8th Cir. 2007); Higgins v. Gonzales, 481 F.3d 578, 590 (8th Cir. 2007).

Here, Littleton has not shown that the Correction Notice harmfully impacted his employment. He did not suffer a loss of pay or hours, his responsibilities did not change, and he was not excluded from any training or mentorship available to other employees. On the other hand, he was explicitly threatened with termination unless he stopped harassing other Pilot employees. If the co-worker accusations were false, and if Pilot knew they were false, should the retaliation claim be dismissed out of hand because this kind of formal disciplinary notice, even if retaliatory, would not *as*

*a matter of law* have dissuaded a reasonable worker from making a charge of discrimination? "Context matters," the Supreme Court observed in <u>Burlington Northern</u>, 548 U.S. at 69. In these circumstances, more analysis is needed.

Putting this issue in the context of undisputed facts in the summary judgment record establishes that Littleton failed to show a causal connection between his first EEOC claim and the Correction Notice. First, the alleged retaliatory action was not sufficiently contemporaneous to the protected activity to raise the inference of a causal connection. <u>See</u> <u>Recio v. Creighton Univ.</u>, 521 F.3d 934, 941 (8th Cir. 2008) (six-months not close enough); <u>Lewis v. St. Cloud State Univ.</u>, 467 F.3d 1133, 1138 (8th Cir. 2006). Second, the Correction Notice concerned Littleton's conduct months after his protected activity. "[T]he anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the work-place." <u>Griffith v. City of Des Moines</u>, 387 F.3d 733, 738 (8th Cir. 2004), quoting <u>Kiel v. Select Artificials, Inc.</u>, 169 F.3d 1131, 1136 (8th Cir.) (en banc), <u>cert. denied</u>, 528 U.S. 818 (1999). Third, Bradshaw, who complained about Littleton's conduct at the Travel Center, had no knowledge of his prior protected activity, and Dyer, who made the initial decision to issue the Correction Notice, had no knowledge of the protected activity when he contacted Bradshaw to learn the details of the Travel Center's complaint. Though Breeding and the Human Relations Director doubtless knew of Littleton's EEOC charge at the time they approved Dyer's disciplinary decision, this sequence of events raises no inference that Pilot instigated either the Travel Center complaint or the resulting discipline for retaliatory purposes.

Littleton argues that Pilot failed to investigate the false accusations, which evidences "a deliberate attempt to begin a termination process for Littleton." But this assertion misstates the summary judgment record. It is undisputed that Bradshaw investigated assistant manager Crow's initial complaint by interviewing other Travel Center employees, and reported the results of his investigation to Dyer, who reported it to Breeding. Dyer and Breeding as Transportation Department supervisors had no

authority to investigate employee complaints at a Travel Center. Thus, they acted reasonably in relying on what Bradshaw reported. That the Travel Center employees who supported Crow's complaint did not prepare written statements until the EEOC conducted its investigation did not refute Pilot's otherwise unrefuted evidence that Bradshaw -- the appropriate Pilot supervisor -- conducted informal employee interviews and reported the results of his investigation to Dyer.

Littleton further argues that Pilot revealed its retaliatory intent when Littleton called Breeding to dispute the Travel Center accusations, and Breeding said that it did not matter whether the accusations were true or not. Of course it mattered to Littleton whether he was falsely accused. But from Breeding's perspective, Littleton, a fuel truck driver, had no job-related reason to linger at a Travel Center after completing a fuel delivery; when the Travel Center manager reported that a driver was harassing Travel Center employees and disrupting operations, the operative principle, "the customer is always right," required a stern warning to the driver, whether or not the customer's complaint was entirely accurate or fair. Thus, while the Correction Notice may not have been tactfully worded, there was a legitimate reason for the warning that created no inference of a causal connection to prior protected activity. On this record, we conclude the district court properly granted summary judgment dismissing Littleton's claims of unlawful retaliation.

## II. The Race Discrimination Claims.

These claims involve annual pay raises given to most transport drivers but not to Littleton in January 2002 and 2003. In August 2000, Littleton was hired to work as a transport driver in Chattanooga, Tennessee. Transport drivers work for a "lead driver" in each area. Two months later, Littleton was transferred to Troy, Illinois. Though he was the only driver at Troy, Pilot designated him the lead driver, which increased his wage to $13.50 per hour. He received another raise to $13.90 per hour in January 2001.

Transportation Director Breeding grew unhappy with Littleton's performance in Troy. Knowing Littleton was from the Memphis area, Breeding asked Littleton if he would become a transport driver in West Memphis, Arkansas, where Pilot needed additional drivers, keeping his lead driver wage. Littleton agreed and transferred in June 2001. His pay rate of $13.90 per hour was higher than any other West Memphis transport driver, including lead driver Eric Meyer, all of whom had greater seniority.

Pilot gives annual raises in January. Breeding makes all transport driver raise determinations. Generally, all drivers in a given location receive the same raise based on cost of living and job performance factors, but Breeding has discretion to consider other factors. Littleton did not receive a pay raise in January 2002. Dyer told Littleton he must wait one year after returning to a transport driver position before receiving an annual pay increase. In January 2003, Littleton again did not receive a raise. Breeding told him his pay remained steady because he was making more than all the other West Memphis drivers. Dyer testified that he agreed with this decision because other West Memphis drivers complained that Littleton was being paid more to do the same job. Breeding testified this was the only reason Littleton was denied pay raises in 2002 and 2003. His annual raises resumed in 2004.

Littleton filed a race discrimination charge when he learned that a white former lead driver in Nashville, Howard Brown, received a raise two years after returning to a transport driver position. In his deposition, Littleton identified Porter Beach and Eric Meyer as two additional white former lead drivers who, like Brown, received raises more quickly than Littleton after returning from lead driver to a transport driver position. Littleton claimed at trial, as he does on appeal, that he was similarly situated to these three white drivers and therefore Pilot's denial of two pay raises was unlawful race discrimination. Breeding and Dyer testified regarding the pay raise decisions at trial.

After reviewing the trial record, Judge Moody made the following findings. Littleton understood in June 2001 that he was transferring from lead driver in Troy to transport driver in West Memphis, keeping his lead driver wage rate. That made him the highest paid driver in West Memphis despite having the least seniority. Three other drivers complained to Dyer about this wage differential. Breeding denied Littleton a raise in 2002 because he was still earning lead driver pay. Breeding denied Littleton a raise in 2003 because he was still earning more than all other West Memphis drivers except the new lead driver, Cedric Clark, an African-American. Littleton identified Brown, Meyer, and Beach as similarly situated white former lead drivers. Brown was promoted to lead driver in 1990, returned to transport driver in 2001 for personal health reasons, received no raise in 2001, and received a raise in 2002 because of his many years of outstanding service. Meyer was promoted to lead driver in West Memphis in April 2000, received a raise as lead driver in January 2002, was demoted to transport driver in February 2002, and was denied pay raises in 2003 and 2004. Beach was hired as a lead driver in Chattanooga in 1990 and returned to transport driver in 2000 after open heart surgery. Littleton remains employed at Pilot. He does not believe Dyer is a racist, nor has Breeding ever said anything suggesting he is racist.

Based upon these findings, the court concluded that Littleton established a prima facie case of discrimination, but that Pilot established a nondiscriminatory reason for its decision not to increase Littleton's wage as a transport driver in West Memphis -- "he was earning more money per hour than any other drivers in his region, all of whom had more seniority." As Littleton failed to establish that Pilot's reason was a pretext for race discrimination, the court ordered entry of judgment dismissing Littleton's claims and later denied his motion for reconsideration. Littleton v. Pilot Travel Ctrs., LLC, 2008 WL 53122 (E.D. Ark. Jan. 2, 2008).

On appeal, Littleton argues the district court "clearly erred in ruling in [Pilot's] favor" given inconsistencies in Breeding's trial and deposition testimony, false

statements to the EEOC denigrating Littleton's job performance, and discredited proffered reasons for its pay raise decisions. The argument is a collage of unrelated assertions supported by general citations to multi-page trial exhibits. To the extent we can match fact assertions to the trial record, we find them unsupported or gross exaggerations. In any event, the assertions are tangential to our limited role on appeal, which is to determine whether the district court's specific factual findings, and particularly its ultimate finding that Littleton failed to prove intentional race discrimination, are clearly erroneous. Having carefully reviewed the trial record, "[w]e cannot say that a trier of fact could only reach the conclusion that [Pilot] was motivated by race . . . prejudice, and we cannot reverse unless we can say that." Cha v. Henderson, 258 F.3d 802, 806 (8th Cir. 2001). Thus, we must affirm.

## III. Two Evidentiary Issues.

**A. Failure To Defer to Judge Howard's "Findings."** At the close of Littleton's case in chief, which included testimony by Breeding and Dyer as well as Littleton, Pilot moved under Rule 52(c) of the Federal Rules of Civil Procedure for judgment based on the partial finding that Littleton submitted no evidence that Pilot's decisionmaker, Breeding, was racist. Judge Howard asked Pilot's counsel, "What weight and credibility is to be accorded Mr. Breeding's testimony given the fact he has made inconsistent statements under oath" in his deposition and at trial? Counsel for Pilot responded that the testimony in question was not inconsistent. Counsel for Littleton disagreed, arguing as he does on appeal that Breeding's failure to recall a conversation in his deposition that he later recalled at trial was an inconsistency that destroyed his credibility. After posing other questions to both counsel, Judge Howard denied the Rule 52(c) motion, and the trial resumed.

On appeal, Littleton argues that Judge Howard's comment regarding Breeding's inconsistent testimony was a finding that Breeding's trial testimony was not credible, and that Judge Moody erred in not deferring to that finding because Judge Howard

was "the only trier of fact to view the witnesses, observe their demeanor, and determine their credibility." This argument is without merit. Judge Howard's comment was not a post-trial finding of fact, it was a comment explaining one reason why the court declined to enter judgment at the close of Littleton's case in chief. Judge Moody's findings of fact were based on a full trial record, which included additional testimony by both Breeding and Dyer. Obviously, Judge Moody credited Breeding's testimony as to the reason Littleton was denied two pay raises. Judge Howard's comment during trial did not preclude that finding.

We note in this regard that Rule 63 of the Federal Rules of Civil Procedure authorized Judge Moody as successor judge, "at a party's request, [to] recall any witness whose testimony is material and disputed and who is available to testify again without undue burden," and to recall other witnesses. Littleton made no Rule 63 request before Judge Moody issued his findings and conclusions. A party "has no right to sit back and await decision of the case before objecting to the procedure." In re Higginbotham, 917 F.2d 1130, 1133 (8th Cir. 1990) (quotation omitted).

**B. Exclusion of Evidence.** One week before trial, Pilot filed a motion in limine to exclude (i) witnesses who could only provide testimony relevant to the dismissed retaliation claims, and (ii) documents from the EEOC investigative file containing inadmissible hearsay. Littleton responded that the witnesses -- current and former employees of the West Memphis Travel Center -- and the EEOC investigator's notes of what witnesses told him when interviewed were relevant and admissible to show that Pilot "is lying . . . about the circumstances surrounding Mr. Littleton's transfer from Illinois, Mr. Littleton's job performance, and the reasons Mr. Littleton was denied his raises, including the issuance of the correction notice." Judge Howard granted the motion and excluded evidence related to the dismissed retaliation claims, explaining that Littleton's "response confirms that all the evidence which [he] seeks to introduce is related solely to the retaliation claim," and that "testimony of

-10-

employees in . . . the travel center . . . could not be relevant to the compensation decisions made in the transportation department."

Littleton argues on appeal that Judge Howard abused his discretion in granting the motion in limine because testimony by the excluded Travel Center witnesses would have demonstrated that Pilot (i) made false statements to the EEOC relating to Littleton's job performance, and (ii) attempted to improperly influence witnesses (Travel Center manager Bradshaw allegedly advised store employees they would not be paid for attending the trial and should "remember to tell the truth").

We will not disturb a district court's exercise of its wide discretion to admit or exclude evidence absent a clear abuse of discretion that "was prejudicial to the point of producing a different verdict." Harris v. Chand, 506 F.3d 1135, 1140 (8th Cir. 2007) (quotation omitted). Littleton falls far short of meeting this rigorous standard. First, he made no showing in the district court that any Travel Center witness had first-hand knowledge relevant to whether Pilot denied Littleton pay raises because of his race, nor to the broader question of Littleton's job performance prior to the pay raise decisions. Second, Judge Howard's ruling did not address the question of Pilot's alleged false statements to the EEOC. Evidence that Pilot gave different, inconsistent explanations for denying the raises might well be relevant to Littleton's race discrimination claims. But Travel Center employees could not speak to that question, and no such evidence was excluded at trial. Finally, the alleged witness tampering was a collateral issue and moreover was totally without merit.

The judgment of the district court is affirmed.

_____