# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-2799

_____

Lakishia Hill,                                       *
                                                     *
    Plaintiff - Appellant,                       *
                                                     *  Appeal from the United States
v.                                                   *  District Court for the
                                                     *  Eastern District of Arkansas.
City of Pine Bluff, Arkansas, et al.,                *
                                                     *
    Defendants - Appellees.                      *

_____

Submitted: June 13, 2012
Filed: October 15, 2012

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Lakishia Hill sued her employer, the City of Pine Bluff, Arkansas; Mayor Carl Redus; and her supervisor, Robert Tucker, asserting discrimination and retaliation claims under 42 U.S.C. § 1983; the Arkansas Equal Pay Act, Ark. Code. Ann. § 11-4-601; and the Arkansas Civil Rights Act ("ACRA"), Ark. Code. Ann. §§ 16-123-101 *et. seq.* Hill appeals the district court's[1] grant of summary judgment dismissing all claims. Reviewing the grant of summary judgment de novo, and viewing all evidence

_____

[1] The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

in the light most favorable to Hill, we affirm.  <u>Tenkku v. Normandy Bank</u>, 348 F.3d 737, 739 (8th Cir. 2003) (standard of review).

## I.  The Wage Discrimination Claim

Hill was hired as a secretary in the City's Inspection and Zoning Department in January 2005.  At that time, the Department employed two zoning officials, Danny Birdsong and Greg Garner, who had worked as zoning officials since 1979 and 1989, respectively.  Birdsong and Garner reported to Bill Glover, head of the Department, who relied on Birdsong to run its zoning operations.  Glover retired in 2007 and was replaced by defendant Robert Tucker.

In mid-2006, Hill expressed interest in becoming a zoning official.  She began accompanying Birdsong and Garner on zoning inspections and at Glover's suggestion completed a course and obtained a zoning-inspector certificate.  After Birdsong retired in July 2006, Hill applied for Birdsong's position.  In November, Glover with Mayor Redus's approval promoted Hill to zoning official.  Birdsong and Garner shared responsibility for training Hill as a zoning official, Birdsong before and Garner after she was promoted.  Hill's initial annual salary was $28,205.30.  Garner's annual salary was then $35,422.  In the spring of 2009, Hill wrote the City's Administration Committee requesting a retroactive salary adjustment to what Birdsong was earning when he retired, $41,000 per year.  On May 19, the City Council approved the Committee's recommendation to increase Hill's salary from $28,205.30 to $35,145.

Hill's amended complaint alleged that defendants' failure to pay her the same salary as the man she replaced, despite a City policy of paying an incoming employee the rate at which the position was budgeted, constituted unlawful gender-based wage discrimination.  She asserted this federal claim under 42 U.S.C. § 1983 but not the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1), which is part of the Fair Labor

Standards Act.[2]  To prevail on this claim under § 1983, plaintiff must prove not only that she received unequal pay for equal work, but also that the unequal pay "was motivated by a discriminatory animus." Ottman v. City of Independence, 341 F.3d 751, 758 (8th Cir. 2003).  Hill asserts only gender discrimination claims under the Equal Protection Clause of the Fourteenth Amendment.   The analysis of discriminatory intent "is essentially the same" as for claims under Title VII.  Tipler v. Douglas County, 482 F.3d 1023, 1027 (8th Cir. 2007).

The district court dismissed Hill's § 1983 claims on two distinct grounds. First, the court concluded that Hill failed to establish a prima facie case of wage discrimination with sufficient evidence that her zoning official position "require[d] equal skill, effort, and responsibility, and [was] performed under similar working conditions," as the positions of Birdsong and or Garner, who had far greater seniority and supervisory responsibilities, including training Hill as a new zoning official. Tenkku, 348 F.3d at 740.  We agree.  In a wage discrimination case, although the jobs being compared need not be identical, they must be substantially equal as actually performed.  See Simpson v. Merchants & Planters Bank, 441 F.3d 572, 578 (8th Cir. 2006).  Job classifications and titles are not dispositive.  Tenkku, 348 F.3d at 741. It is undisputed that Birdsong and Garner had far greater seniority and relevant experience than Hill; trained Hill as a new zoning official; and had significant supervisory responsibilities.  On this summary judgment record, no reasonable jury could find that, when Hill was promoted to zoning official, her new position was substantially equal to the position of either the senior supervisory official she replaced, Birdsong, or the successor supervising official, Garner.  See Buettner v. Arch Coal Sales Co., 216 F.3d 707, 719 (8th Cir. 2000), cert. denied, 531 U.S. 1077 (2001); Krenik v. County of Le Sueur, 47 F.3d 953, 961 (8th Cir. 1995).

---

[2]Hill's amended complaint also asserted a wage discrimination claim under the Arkansas Equal Pay Act ("AEPA"), Ark. Code. Ann. § 11-4-601(a).  Because she did not argue that claim on appeal, we deem it abandoned.  See Griffith v. City of Des Moines, 387 F.3d 733, 739 (8th Cir. 2004).

Second, the district court concluded that, even if Hill established a prima facie case, defendants came forward with a legitimate nondiscriminatory reason for the salary disparity -- the City's "seniority system" -- and Hill failed to present sufficient evidence that the disparity was the product of purposeful gender discrimination. Again, we agree. In January 2006, the City enacted an ordinance directing Mayor Redus to conduct a comprehensive salary survey with the aim of developing a pay system to "reward experience and tenure in employment." The consulting firm Mayor Redus retained delivered its survey results in October 2006, a month before Hill was promoted. Hill's starting salary as a zoning official fell within the salary range for that position as reflected in the survey. This showing more than satisfied the City's burden to articulate a nondiscriminatory explanation for the difference in pay, which required Hill under the third step of the familiar McDonnell Douglas analysis to present sufficient evidence for a reasonable fact finder to conclude that the City's nondiscriminatory reason was a pretext for unlawful gender discrimination. See Griffith, 387 F.3d at 736. Hill argues the City's proffered reason was pretextual because the salary survey was not formally adopted until after she was promoted. But that does not discredit Mayor Redus's testimony that he relied on the survey in approving Hill's initial salary.

Hill's allegation that the City violated a policy of paying a new employee "what the position was budgeted for" is based primarily on a December 2004 memorandum in which an Assistant City Attorney stated that "persons *may* be hired for existing positions at the salary level budgeted for that position in the new budget without Administrative Committee review" (emphasis added). That is hardly evidence of a firm policy to pay new employees the amount budgeted. Moreover, deviation from such a policy would not establish that Mayor Redus's reliance on a more recent salary survey conducted at the direction of the City Council was pretextual. Though Hill argues "the record is replete with instances of males getting paid the amount budgeted for, or more, while females do not get that benefit," she failed to identify a *similarly*

*situated* man who had little or no relevant work experience but was nonetheless paid a starting salary equal to the salary of his more experienced predecessor.

Hill further argues the district court erred in dismissing her wage discrimination claims because she presented sufficient direct evidence of gender discrimination, namely, (1) testimony by the former and current Human Resources Directors that Mayor Redus has discriminated against women and that his hiring practices raised "red flags"; (2) statements by two members of the City Council that Mayor Redus was not paying women correctly; and (3) a question that Mayor Redus asked Hill before she was hired as a zoning official. With the exception of the interview question, Hill's attorney presented the same "direct evidence" in an earlier case; the district court in granting summary judgment for the City concluded this was not direct evidence of gender discrimination, and we summarily affirmed. Johnson v. City of Pine Bluff, No. 5:10-CV-0037, 2011 WL 3047655, at *3 (E.D. Ark. July 25, 2011), aff'd, 450 Fed. App'x 557, 557-58 (8th Cir. 2012). The direct evidence contention is equally unpersuasive in this case. Hill admitted in her deposition that the question Mayor Redus asked before approving Hill's promotion -- whether she could "fulfill the field tasks [of a zoning official] as a woman" -- was not improper. It also had nothing to do with setting her initial salary.

For these reasons, viewing all the evidence in the light most favorable to Hill, we conclude no reasonable fact finder could find that any defendant was guilty of intentional, gender-based wage discrimination when her initial salary as a new zoning official was established in November 2006.

## II. The Failure-To-Hire Claim

Hill next argues the district court erred in dismissing her claim that defendants were guilty of gender discrimination when she applied for the position of Emergency Management Coordinator in the Fire Department in early 2009, a five-person hiring

committee unanimously recommended her for the position, and Mayor Redus rejected the recommendation and hired Lieutenant Earnest Jones, an African-American male firefighter who had not applied for the position. The district court assumed that Hill established a prima facie case of failure-to-hire gender discrimination but granted summary judgment based on undisputed evidence supporting defendants' legitimate nondiscriminatory reason for hiring Jones -- "he had more experience and was better qualified." We agree.

Hill argues the City's explanation was pretextual because the hiring committee's recommendation established that she was clearly qualified for the emergency-management position. This argument misses the mark. "To support a finding of pretext, [Hill] must show that the City hired a *less* qualified applicant." Torgerson v. City of Rochester, 643 F.3d 1031, 1049 (8th Cir. 2011) (en banc) (quotations omitted and emphasis in original). Jones was an experienced firefighter who had recently earned a degree in emergency management from Arkansas Tech University. That the City hired a *more* qualified individual -- which Hill does not dispute -- does not permit an inference of unlawful discrimination. See Kincaid v. City of Omaha, 378 F.3d 799, 805-06 (8th Cir. 2004). Hill argues that gender discrimination may be inferred from the fact that Jones did not apply for the position. But there was no evidence the City had a policy of hiring only persons who apply for a position. That Mayor Redus affirmatively sought out someone already in the Fire Department who was more qualified for the position than the hiring committee's candidate is neither surprising nor evidence of pretext.

### III. The Retaliation Claim

Nearly five months after Hill filed this lawsuit in September 2009, defendant Tucker reprimanded her for commenting on "the possibility of new businesses coming to town" at a public City Planning Commission meeting that drew coverage in the local newspaper. Hill denied doing anything wrong, as the City had no policy

prohibiting employees from such public comment. Hill testified that Tucker became angry and said "he was tired of me and my silly little lawsuit, and he was writing me up." In his deposition, Tucker admitted that he and Hill had yelled at each other, and that he had told Hill he did not know how to deal with a "girl" like her and found her lawsuit to be personally offensive. Following this conversation, Tucker issued Hill a written warning for being rude and insubordinate, stating that Hill "became defensive and antagonistic" and that she "displayed a loud voice and agitated behavior that is unacceptable in the workplace."[3] Hill immediately complained to the Human Resources Director and soon amended her complaint to add claims of unlawful retaliation under § 1983 and the ACRA against Tucker and the City. The district court dismissed these claims because Hill "failed to establish with any evidence that the alleged retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights."

On appeal, Hill argues the testimony establishing that Tucker issued her a written warning because she filed a lawsuit was sufficient evidence of unlawful retaliation. To establish a retaliation claim under § 1983, Hill must show (1) she engaged in constitutionally protected activity; (2) a government official's adverse employment action caused injury that would "chill a person of ordinary firmness" from continuing that activity; and (3) the adverse action was motivated at least in part by the exercise of her constitutional rights. Naucke v. City of Park Hills, 284 F.3d 923, 927-28 (8th Cir. 2002) (quotations omitted).

In this circuit, the second factor was significantly altered in employee retaliation cases by the Supreme Court's decision in Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53 (2006). Formerly, we required an employee plaintiff to prove that the alleged retaliation resulted in an "adverse employment action." See, e.g.,

---

[3]Tucker had issued Hill a verbal warning concerning similar conduct in February 2009.

Cross v. Cleaver, 142 F.3d 1059, 1071 (8th Cir. 1998). As the district court recognized, under White the test is whether the alleged retaliatory action was "materially adverse," that is, whether it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 548 U.S. at 68 (quotations omitted). Applying this test, "[we] have consistently held that, to be materially adverse, retaliation cannot be trivial; it must produce some injury or harm." Littleton v. Pilot Travel Ctrs., LLC, 568 F.3d 641, 644 (8th Cir. 2009) (quotations omitted). Accordingly, we have concluded that "commencing performance evaluations, or sending a critical letter that threatened appropriate disciplinary action, or falsely reporting poor performance, or lack of mentoring and supervision were actions that did not establish a prima facie case of retaliation, absent showings of materially adverse consequences to the employee." Id. (collecting cases).

Here, Hill failed to show that the written warning caused her "injury or harm." Tucker's written warning did not threaten termination or any other employment-related harm, unlike the "correction notice" given the employee plaintiff in Littleton, 568 F.3d at 644. She suffered no loss of pay, reduction in hours or responsibilities, or exclusion from training and advancement opportunities, and she presented no evidence that a certain number of disciplinary warnings regularly result in the City imposing employment-related harm, evidence that would be relevant to determining whether Tucker's warning would have dissuaded a reasonable worker from continuing in her protected activity. We agree with the district court there was clearly no such chilling effect in this case. Hill filed a formal grievance the day after receiving the written warning and amended her complaint to add claims of unlawful retaliation. That Hill had been disciplined for similar misconduct some months before she filed this lawsuit in September 2009 further weakens any inference that she considered Tucker's January 2010 warning "materially adverse."

Finally, Hill argues that the district court erred in dismissing her retaliation claims under the ACRA because in an earlier decision, Faircloth v. Bowers, No. 1:05-

CV-0089, 2007 WL 593042, at *8 (E.D. Ark. Feb. 20, 2007), the court concluded that one subpart of the Arkansas statute, § 16-123-108(b), "contains broader prohibitions" than the "adverse employment action" standard applied by the Eighth Circuit in Title VII cases under federal law. This contention ignores a critical development. The Eighth Circuit federal standard compared by the district court in Faircloth – "adverse employment action" -- was significantly modified by the Supreme Court's decision in White, which of course is now controlling in the Eighth Circuit. We have consistently held, with no contrary reaction from the Supreme Court of Arkansas, that retaliation claims under the ACRA are analyzed under the same substantive standards as retaliation claims under Title VII. See McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 860 (8th Cir. 2009); Wallace v. Sparks Health Sys., 415 F.3d 853, 861 (8th Cir. 2005). We see no basis for concluding that the Arkansas Court would now hold that White provides an inadequate standard for analyzing claims under both subparts of Ark. Code Ann. § 16-123-108. Accordingly, we deny Hill's motion to certify this question to the Supreme Court of Arkansas.

The judgment of the district court is affirmed.

_____