# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-3991

_____

Gary N. AuBuchon

*Plaintiff - Appellant*

v.

Timothy F. Geithner, in his capacity as Secretary of the Treasury

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 25, 2013
Filed: February 26, 2014

_____

Before WOLLMAN, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Gary AuBuchon sued Timothy Geithner, in his capacity as the Secretary of the Treasury, for retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, based on incidents between him and the Internal Revenue

Service (IRS), his former employer. The district court[1] granted Geithner's motion for summary judgment. AuBuchon argues that the district court erred because a reasonable jury could determine that the IRS's failure to promote AuBuchon to senior international agent violated Title VII. AuBuchon avers that the IRS retaliated against him by, without justification, accusing AuBuchon of sexual harassment, accelerating his work deadlines, increasing his workload, and failing to provide adequate performance reviews. AuBuchon also contends that the IRS constructively discharged him through these actions. We affirm.

## I. *Background*

Gary AuBuchon, a Caucasian male, worked for the IRS from 1979 until retirement in December 2009. During the events giving rise to this suit, he was an international examiner. International examiners are assigned to a team that examines the tax returns of large taxpayers, and they address various international concerns that develop throughout the course of an audit or other examination. AuBuchon worked for the "Town and Country Group" in Missouri.

The IRS ties promotions from international examiner to senior international examiner to work that agents complete on individual cases. Cases that merit the review of a senior international agent are first assigned the position before an individual is designated to fill it. Thus, an employee seeking a promotion to senior international examiner must be assigned to a case that has also been assigned a senior-international-agent position. Thereafter, individuals may apply for that position for that particular case. Senior international agents are very experienced agents whose "primary responsibility is to work on the most complex cases that have been designated as a senior international examiner case."

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

In 2006, AuBuchon, in the "M" case, performed work comparable to that of a senior international agent because of that case's size and complexity and his supervisory role in its handling. However, the "M" case had not been assigned a senior international agent position.

In March 2007, AuBuchon attempted to apply for a senior-international-examiner promotion based on the "E" case.[2] AuBuchon did not receive the promotion; instead, the IRS awarded the promotion to an African-American female. Consequently, AuBuchon filed a complaint with the Equal Employment Opportunity Commission (EEOC) on December 13, 2007, alleging racial and gender discrimination. Over the course of the following two years, AuBuchon asserted that the IRS unlawfully retaliated against him for making this EEOC complaint, ultimately leading to his involuntary retirement. He sued Geithner, in his capacity as the Secretary of the Treasury, for retaliation under Title VII.

The district court granted Geithner's motion for summary judgment. The district court determined that, under this court's precedents, the IRS need not create a position for which AuBuchon could be promoted. *See Moore v. Forrest City Sch. Dist.*, 524 F.3d 879, 885 (8th Cir. 2008). Furthermore, AuBuchon's remaining allegations of retaliation were insufficient to constitute a material adverse employment action or a constructive discharge.

II. *Discussion*

AuBuchon argues on appeal that the district court erred in granting Geithner's motion for summary judgment because a reasonable jury could find that (1) the IRS's failure to promote AuBuchon to senior international agent for his work on the "M" case was unlawful retaliation that constituted a material adverse employment action;

_____

[2]The parties did not disclose the full names of the audited companies for confidentiality reasons.

(2) the IRS's other retaliatory actions were material adverse employment actions; and (3) this retaliation resulted in AuBuchon's constructive discharge from the IRS.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact dispute is genuine when the evidence would allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We review a district court's grant of summary judgment de novo, "considering the facts in the light most favorable to [the nonmoving party] and giving [that party] the benefit of reasonable inferences in the record." *Holmes v. Trinity Health*, 729 F.3d 817, 821 (8th Cir. 2013).

Title VII prohibits the federal government from discriminating against its employees and those seeking employment based on race, color, religion, sex, or national origin. 18 U.S.C. § 2000e-16. The Act prohibits employer retaliation against employees who engage in a protected activity like filing an EEOC complaint. 42 U.S.C. 2000e-3. To prove a prima facie case of unlawful retaliation, employees must demonstrate that (1) they engaged in a statutorily protected activity, (2) the employer took adverse employment action against them, and (3) a causal connection exists between the employee's protected activity and the employer's adverse employment action. *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 917 (8th Cir. 2007).

The Supreme Court clarified the term "adverse employment action" in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006). Prior to *Burlington*, this court took a relatively restrictive approach to the phrase, holding that an adverse employment action occurred only where there were "tangible change[s] in duties or working conditions that constituted a material employment disadvantage." *Manning v. Metro. Life Ins. Co., Inc.*, 127 F.3d 686, 692 (8th Cir. 1997). In its

*Burlington Northern* decision, the Court characterized our standard as the "ultimate employment decision" standard, limiting retaliatory conduct to acts like "hiring, granting leave, discharging, promoting, and compensating." 548 U.S. at 60 (quotations, alterations, and citations omitted). The *Burlington Northern* Court articulated a new objective standard for determining what constitutes an "adverse employment action." *Id.* at 68. The Court held that an employee demonstrating an adverse employment action must "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 67 (quotations and citations omitted); *see also Lisdahl v. Mayo Found.*, 633 F.3d 712, 720 (8th Cir. 2011).

## A. *Failure to Promote*

AuBuchon argues that the IRS retaliated against him by failing to promote him to senior international agent. Geithner responds that no position was ever available because the "M" case had not been approved for a senior international agent. Thus, "no one, including AuBuchon, could have applied for this nonexistent position." To determine whether the "E" case is sufficiently complex to receive a senior international agent, the IRS developed a point system. Case managers assigned the "E" case points based on its difficulty. These points provided an assessment tool to those with discretion to determine whether they should assign a senior international agent to the "E" case; however, attainment of a certain amount of points did not automatically qualify the "E" case for a senior international agent.

AuBuchon worked on the "M" case from 2006 until his retirement in 2009. The point ratings assigned to the "M" case increased each cycle. AuBuchon claims to have expended over 25 percent of his work time on the "M" case. AuBuchon was one of the two most experienced international agents on that case, and the other was later promoted to a senior international agent elsewhere (thus preventing her from being

re-promoted in competition with AuBuchon). Ronald Webster, AuBuchon's immediate supervisor, recommended that the "M" case receive a senior-international-agent position. The "M" case, however, never received such a position. AuBuchon asserts that the IRS retaliated against him by failing to assign the "M" case a senior-international-agent position for which he could apply.

AuBuchon also contends that he would not have actually competed for the position because he was already the most experienced, lead international agent on the "M" case. Alternatively, he contends that he was entitled to a temporary raise in salary to that of a senior international agent while he worked on the "M" case pursuant to the collective bargaining agreement with the IRS.[3]

Unquestionably, failure to promote can constitute an adverse employment action that would support a plaintiff's retaliation claim. *Watson v. O'Neill*, 365 F.3d 609, 613 (8th Cir. 2004). In fact, a failure-to-promote claim has satisfied this court's stricter, pre-*Burlington Northern* standard. *See id*. We have never held, however, that an employer must create a position to which the complaining party may be promoted. Specifically, we have stated:

> Moore argues that the School District took adverse action against her by not promoting her in August 2005. The district court found that there was no position available at that time. Because there was no promotional opportunity available to Moore in August 2005, no reasonable employee would have found the School District's failure to promote her at that

[3]Article 16, Section 1(B)(1) of the collective bargaining agreement provides, "An employee who is detailed to a position of higher grade for one (1) full pay period or more will be temporarily promoted, if eligible, and receive the rate of pay for the position to which temporarily promoted." Furthermore, Article 16, Section 1(B)(2) states, "If an employee is not detailed to a position of higher grade, but who performs higher graded duties for 25% or more of his or her direct time during the preceding four (4) months," the IRS would temporarily promote the employee if the employee met other criteria.

time to be materially adverse. Consequently, Moore cannot demonstrate that she suffered an adverse employment action.

*Moore*, 524 F.3d at 885.

The same reasoning applies to the present case. No senior-international-agent position was available to which AuBuchon could be promoted based on his work in the "M" case. Because of this lack of promotional opportunity, no reasonable employee would have found the IRS's failure to promote AuBuchon to be materially adverse. Furthermore, had a position been created, other international examiners would have had the opportunity to apply for the position. Although AuBuchon would have been qualified for the promotion based on his previous work on the "M" case, it would be mere speculation to conclude that he would have been more qualified than other potential candidates.

Finally, although AuBuchon claims alternatively that he is entitled to a temporary promotion pursuant to his employment contract, he never filed a union grievance to obtain it. Because AuBuchon never attempted to file a union grievance or provide an adequate excuse for failing to file a grievance, we will not entertain his argument. *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965) ("[F]ederal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress.")).

Thus, AuBuchon has failed to demonstrate that the IRS's failure to promote him to a senior international agent for his work on the "M" case constituted a materially adverse employment action.

### B. *Other Retaliatory Acts*

AuBuchon alleges that the IRS retaliated against him through a variety of other actions. These actions include reckless allegations of sexual harassment, acceleration

of work deadlines, an increase in workload, and insufficient performance reviews. The government counters that these actions, whether considered individually or collectively, do not constitute a material adverse employment action.

As previously noted, *Burlington Northern* provided a new objective standard for what constitutes an "adverse employment action." 548 U.S. at 68. The Court determined that adverse employment action is action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quotations and citations omitted). The Court expounded on this standard. First, an adverse employment action must be material, not trivial. *Id.* at 68. Reporting discriminatory behavior "cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* In other words, Title VII does not promulgate a "civility code for the American workplace." *Id.* (quotation and citation omitted). Second, the Court specifically adopted a flexible standard because retaliation often depends upon the particular circumstances. *Id.* In other words, "[c]ontext matters." *Id.*

Since *Burlington*, we have discussed the Court's objective standard for material adverse employment action. To avoid the triviality pitfall, the retaliation must produce some "injury or harm." *Littleton v. Pilot Travel Ctrs., LLC*, 568 F.3d 641, 644 (8th Cir. 2009) (quotation and citation omitted). As a result, we have determined that commencing performance evaluations, sending critical letters that threatened discipline, falsely reporting poor performance, and failing to mentor and supervise employees did not establish a prima facie case of retaliation absent materially adverse consequences to the employee. *Id.* (collecting cases). In other post-*Burlington Northern* cases, we have determined as a matter of law that certain employer actions were not materially adverse because they did not result in sufficient "injury or harm" to the employee in question. *See Lisdahl*, 633 F.3d at 721–22 (threats pertaining to job security, denial of vacation time, and public ridicule); *Sutherland v. Mo. Dept. of Corr.*, 580 F.3d 748, 752 (8th Cir. 2009) (reclassification of performance from "highly successful" to "successful" not accompanied by reduction in pay, salary, benefits, or prestige); *Recio v. Creighton Univ.*, 521 F.3d 934, 939–40 (8th Cir. 2008)

(extended duration of employer-mandated counseling, failure to notify of job vacancy, changes in work schedule, denial of opportunity to teach certain classes, maintenance of cold temperature in office, and faculty shunning); *Gilbert*, 495 F.3d at 917–18 (demotion of provost for plagiarizing, letter directing provost to improve performance, prevention of selecting guest speaker, and assignment to open cubicle); *Clegg v. Ark. Dept. of Corr.*, 496 F.3d 922, 929 (8th Cir. 2007) (failure to provide training and orientation, denying access to work tools, failure to reinstate to prior position, addition of negative reports and reprimands to personnel file, exclusion from meetings, and denial of training). Importantly, we have also determined that a supervisor's warnings that "did not threaten termination or any other employment-related harm" do not constitute material adverse employment action. *Hill v. City of Pine Bluff, Ark.*, 696 F.3d 709, 715 (8th Cir. 2012).

AuBuchon avers that the IRS engaged in several other unlawful retaliatory acts. First, AuBuchon argues that Webster's reckless allegations of sexual harassment constituted material adverse employment action. In January 2008, Webster verbally warned AuBuchon that he had been "paying too much attention to somebody." Webster refused to divulge further details. A third party approached Webster with concerns about AuBuchon's behavior; however, Webster never spoke with the alleged victim about the problem. As a result of the allegations, AuBuchon had "to walk on eggshells for fear of offending somebody" for a few months. In fact, the alleged victim approached Webster a few months after his warning to complain that AuBuchon had turned a cold shoulder toward her, indicating that AuBuchon did not sexually harass her a few months earlier. Webster would later tell AuBuchon's union steward that the allegations were "substantiated" although Webster never spoke with the victim.

While Webster's actions were reckless and inconsiderate, they never resulted in any "injury or harm" to AuBuchon. Webster brought the allegations to AuBuchon's attention and requested that he cease. Webster never threatened AuBuchon or disciplined him. Webster never noted the allegations in AuBuchon's personnel file.

-9-

As a result, Webster's warnings did not result in sufficient "injury or harm" because he never "threaten[ed] termination or any other employment-related harm." *Id.*

Second, AuBuchon asserts that the IRS unlawfully retaliated against him by accelerating his work deadlines and assigning him extra work. He also contends that Webster's subsequent performance reviews of AuBuchon, where AuBuchon attained the highest ratings of his career, were insufficient because Webster did not adequately laud AuBuchon's job performance in the narrative portion of the evaluation. These complaints, whether considered individually or collectively, fail to rise to the level of unlawful retaliation because they constitute "petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N.*, 548 U.S. at 68. Thus, AuBuchon has failed to demonstrate unlawful retaliation because no reasonable juror could determine that the IRS undertook material adverse employment actions.

## C. *Constructive Discharge*

AuBuchon argues that the IRS's retaliatory actions forced him to retire early due to stress-related health concerns. To prove a claim for constructive discharge, employees must demonstrate "that the employer deliberately created intolerable working conditions with the intention of forcing [them] to quit." *Sanders v. Lee Cnty. Sch. Dist. No. 1*, 669 F.3d 888, 893 (8th Cir. 2012) (quotation and citation omitted). However, we have previously observed that plaintiffs have a higher evidentiary burden to prove a constructive discharge than an adverse employment action. *Wilkie v. Dept. of Health & Human Servs.*, 638 F.3d 944, 954 (8th Cir. 2011) (citing *Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1270–71 (10th Cir. 2004)). Because AuBuchon has failed to demonstrate material adverse employment actions based on these same incidents, he necessarily has failed to demonstrate constructive discharge.

## III. *Conclusion*
Consequently, we affirm the judgment of the district court.

_____